**Affirmed and Opinion filed November 18, 2021.**



**In the**

# Fourteenth Court of Appeals

---

**NO. 14-18-00896-CV**

---

**CITY OF HOUSTON; MAYOR SYLVESTER TURNER; CONTROLLER CHRIS BROWN; COUNCIL MEMBERS AMY PECK, TARSHA JACKSON, ABBIE KAMIN, CAROLYN EVANS-SHABAZZ, DAVE MARTIN, TIFFANY D. THOMAS, GREG TRAVIS, KARLA CISNEROS, ROBERT GALLEGOS, EDWARD POLLARD, MARTHA CASTEX-TATUM, MIKE KNOX, DAVID ROBINSON, MICHAEL KUBOSH, LETITIA PLUMMER, AND SALLIE ALCORN; AND DIRECTOR OF FINANCE TANTRI EMO, Appellants**

**V.**

**HOUSTON MUNICIPAL EMPLOYEE PENSION SYSTEM; BOARD CHAIRMAN SHERRY MOSE; BOARD VICE-CHAIRMAN LENARD POLK; BOARD SECRETARY RHONDA SMITH; AND BOARD TRUSTEES RODERICK J. NEWMAN, ROY W. SANCHEZ, LONNIE VARA, BARBARA CHELETTE, DENISE CASTILLO-RHODES, DAVID DONNELLY, EDWARD J. HAMB II, AND ADRIAN PATTERSON, Appellees**

---

**On Appeal from the 333rd District Court
Harris County, Texas
Trial Court Cause Nos. 2015-35252 & 2015-35252A**

---

# OPINION

This case is a continuation of the dispute between the Houston Municipal Employee Pension System and its board of trustees, on one hand, and the City of Houston and various city officials, on the other. The Pension System brought this suit seeking a writ of mandamus from the district court to compel the City to make payments to the Pension System that the Pension System contends are statutorily required. The Pension System also asserted ultra vires claims against the members of the City Council and certain other officials for failure to allocate and make the payments. The City asserted counterclaims against the Pension System and third-party claims against the Pension System's board of trustees. The trial court denied the City Parties' plea to the jurisdiction and granted the Pension System Parties' motion for summary judgment. The City Parties challenge both rulings on appeal. We affirm.

## I. BACKGROUND

The Pension System is a defined-benefit pension plan administered by a board of trustees and organized and operated under what is designated as Texas Revised Civil Statutes article 6243h (the Act), which applies only to cities with a population exceeding two million people—that is, to the City of Houston. *See* TEX. REV. CIV. STAT. art. 6243h, § 1(4). The board has broad powers to "interpret and construe" the Act; to "correct any defect, supply any omission, and reconcile any inconsistency" in the Act in the manner and to the extent that the board considers expedient for the greatest benefit of the Pension System's members; and to "determine all questions, whether legal or factual, relating to eligibility for membership, service, or benefits or relating to the administration of the pension fund to promote the uniform administration of the pension fund for the benefit of all members and retirees." *Id.*

2

§ 2(x). The board's determinations of fact and its interpretation of the Act "are final and binding on any interested party," and thus, largely insulated from judicial review. *Klumb v. Hous. Mun. Emps. Pension Sys*., 458 S.W.3d 1, 4 (Tex. 2015); *Hous. Mun. Emps. Pension Sys. v. Ferrell*, 248 S.W.3d 151, 158–59 (Tex. 2007).

In 2011, the City announced plans to remove employees from its Convention and Entertainment Facilities Department and to outsource these services and employees to a local-government corporation, Houston First Corporation. In response, the Pension System's board adopted a resolution that, for the purposes of the statutory pension plan, the Act's definition of "employee" includes full-time employees of local-government corporations controlled by the City, upon such a determination by the board's External Affairs Committee. The board revised the pension-plan documents to incorporate this definition.

The City then formed the nonprofit corporation Houston First Foundation and indicated that this entity would employ all the City employees who were to have joined Houston First Corporation. The Pension System's board adopted another resolution reiterating its construction of "employee" and announcing that employees of any entity controlled directly or indirectly by the City are considered employees for purposes of membership in the Pension System unless the External Affairs Committee expressly determines otherwise; "provided, however, that nothing in this resolution would apply to . . . any otherwise ineligible employee as determined by the External Affairs Committee."

Thereafter, the City formed another nonprofit corporation called Convention and Cultural Services, Inc. ("CCSI"), to employ the workforce, which CCSI then leased to Houston First Corporation, CCSI's only client. The External Affairs Committee issued a resolution that these leased workers remain members of the

Pension System as part of a control group. We refer to all employees of Houston First Corporation, Houston First Foundation, and CCSI as the CCSI Employees.

## A.    *Klumb v. Houston Municipal Employees Pension System*

Following this nominal transfer of the workforce, two groups of CCSI Employees sued the Pension System and those members of its board who had voted to amend the pension-plan documents incorporating the board's construction of the term, "employee." *See Klumb*, 458 S.W.3d at 6. The claims of both groups rested on the premise that they were employed only by CCSI and were no longer employed by the City. The first of these groups was composed of CCSI Employees who were eligible to retire and who maintained that they were entitled to receive retirement benefits from the Pension System even though they were still actively performing the same duties. *See id.* The other group of CCSI Employees were not yet eligible to retire, and they argued that they were entitled to defer retirement status and to require the Pension System to stop deducting a percentage of their salaries for contribution to the pension fund. *See id.* The *Klumb* plaintiffs alleged breach of a meet-and-confer agreement (MCA) between the City and the Pension System, violations of the state and federal constitutions, and ultra vires claims. *See id.* at 7. The City intervened, aligning itself with the plaintiff-employees. *Id.* at 7. The Pension System and the board members challenged the trial court's subject-matter jurisdiction on the grounds of immunity and of the Act's denial of the right to judicial review of the board's construction and application of the term, "employee." *See id.* The trial court granted the plea, and both the intermediate appellate court and the Supreme Court of Texas affirmed. *See id.* at 4.

The court held that the board's actions in construing the Act's terms, applying those interpretations, and delegating authority to an External Affairs Committee were not ultra vires but were within the board's broad discretionary authority under

4

the Act. *Id.* at 10–11. As for the breach-of-contract claims, the court held that noncompliance with a contract such as the MCA does not give rise to an ultra vires claim but presents only a claim for breach of contract, and no waiver of governmental immunity from contract claims was alleged or supported. *See id.* at 12. Regarding the constitutional claims, the court explained that immunity from suit was not waived because the claims were facially invalid. *See id.* at 13–17.

**B.**     ***City of Houston v. Houston Municipal Employees Pension System***

Shortly after *Klumb* was decided, the Pension System's board asked various City officials and the leadership of the Houston First and CCSI entities to designate a person to provide employee and payroll information about the CCSI Employees. The requests' recipients refused. The City also failed to allocate or pay the City's statutorily required contributions to the pension fund and "pick up" contributions, that is, the City's additional contribution to the pension fund in lieu of direct contributions by the members. *See City of Houston v. Hous. Mun. Emps. Pension Sys.*, 549 S.W.3d 566, 571 (Tex. 2018) ("*Pension System I*"); *see also* TEX. REV. CIV. STAT. art. 6243h, § 8(a), (c).

The Pension System sued the City and, in their official capacities, the mayor, the controller, the members of the city council, and the director of the finance department (the City Officials; we refer to collectively to the City and the City Officials as the City Parties). The Pension System filed a mandamus proceeding in the district court seeking issuance of a writ compelling the City Parties to provide information about CCSI Employees[1] and "to allocate funding in the current City

---

[1] The parties later settled these claims, which had been asserted under the Texas Public Information Act (TPIA). At the parties' request, we dismissed a separate petition for writ of mandamus filed in this court before the settlement that asserted those claims. *See In re City of Houston*, No. 14-19-00142-CV, 2019 WL 4021961 (Tex. App.—Houston [14th Dist.] Aug. 27,

5

budget to provide the statutorily required payments of 27.36% of the payroll of the [CCSI] employees"; to pay the allocated funds to the Pension System; to make such allocations and payments part of all future proposed City budgets; and to make "pick up" contributions on behalf of the CCSI Employees. *See* TEX. GOV'T CODE ANN. § 24.011 (writ power of district-court judge). The Pension System alleged that the City Parties had a ministerial duty to do these things, and that the City Officials' conduct in failing to do so was ultra vires.

The City filed counterclaims against the Pension System and third-party claims against the members of the Pension System's board of trustees in their official capacities.[2] Many of the City's allegations repeated the claims raised in *Klumb*: the City alleged that the Pension System and its board members breached an MCA, improperly delegated authority to the External Affairs Committee, and committed ultra vires acts by their interpretation of the term "employee." The City also asserted that the Pension System Parties violated the Open Meetings Act, and the City sought declaratory and injunctive relief requiring the Pension System Parties to correct their alleged statutory violations and prohibiting them from enforcing any obligation based thereon. In the alternative, the City asked for declaratory and injunctive relief to prevent inverse condemnation. The City also asked the trial court to invalidate and correct actions the City characterized as arbitrary and capricious, or as adversely affecting the City's vested property rights, or as violating the City's constitutional rights. Finally, the City sought mandamus relief to correct the alleged abuses of discretion by the Pension System and its board.

---

2019, orig. proceeding) (per curiam) (mem. op.). We likewise do not address the TPIA issues included in the City Parties' pre-settlement briefing in this appeal as those issues are now moot.

[2] Pursuant to Texas Rule of Appellate Procedure 7.2(a), we have substituted the names of the current City Officials and the current members of the Pension System's board of trustees.

Regarding the Pension System's affirmative claims, the City Parties filed a plea to the jurisdiction in which they argued that the Pension System lacked standing to bring claims under the Act and that governmental immunity barred the claims. The trial court denied the City Parties' plea.

On interlocutory appeal of the denial of the jurisdictional plea, we rejected the challenge to the Pension System's standing. *City of Houston v. Hous. Mun. Emp. Pension Sys.*, 513 S.W.3d 114, 135 (Tex. App.—Houston [14th Dist.] 2016, pet. granted), *rev'd in part on other grounds*, *Pension System I*. Regarding governmental immunity, the City Parties argued that immunity remained intact because the Pension System had not pleaded a valid ultra vires claim. The City Parties pointed out that the Pension System sought to compel payment of a 27.36% contribution rate as specified in a 2011 MCA rather than the higher contribution rate required by statute; thus, the City Parties reasoned that the Pension System was really trying to enforce a contract rather than to compel compliance with a statutory duty. We agreed and held that the Pension System should have the opportunity to amend its pleading to seek compliance with the statute. *Id.* at 128–29. We also agreed with the City Parties' argument that ultra vires claims could be asserted only against the City Officials, and not against the City itself. *Id.* at 134. In all other respects, we affirmed the trial court's denial of the City Parties' plea to the jurisdiction.

On further appeal, the Supreme Court of Texas held that the Pension System need not amend its pleading because it already had stated a valid ultra vires claim for payments required by statute. *Pension System I*, 549 S.W.3d at 580. The court pointed out that even though the Pension System pleaded for relief based on the lower contribution rate specified in the MCA rather than the higher statutory rate, a litigant need not pursue all of the relief to which it is entitled. *Id.* Because payments

7

of at least the amount sought were statutorily required, the Pension System had pleaded a valid ultra vires claim. *See id.*

## C.    On Remand

On remand, the Pension System and its individual board members moved for summary judgment, and the City Parties filed a second plea to the jurisdiction.

The Pension System and its board sought (1) traditional summary judgment on the Pension System's claims for mandamus relief compelling the City Parties to comply with their pension-contribution obligations, an argument for which they relied primarily on *Klumb* and on the previous appeal in this case; and (2) no-evidence and traditional summary judgment rejecting the City Parties' affirmative defenses, counterclaims, and third-party claims.

The trial court denied the City Parties' plea to the jurisdiction and rendered summary judgment in favor of the Pension System and its board members. Regarding the Pension System's affirmative claims, the trial court granted the Pension System's requested mandamus relief to compel the City Officials (1) to include CCSI Employees in the pensionable payroll for fiscal years 2017–2019 "such that the excess liability as calculated by the [Pension System] actuary based on the correct and updated information for [CCSI Employees] is a current obligation of the City"; and (2) to make contribution payments and pick-up payments for CCSI Employees in the then-current, and all future, fiscal years. As part of the summary judgment, the trial court also expressly ruled in favor of the Pension System and its board members and against the City Parties on the latter's affirmative defenses, counterclaims, and third-party claims.[3] The trial court allowed the City Parties'

---

[3] The trial court severed the Pension System's claim for attorney's fees in connection with its TPIA claims into a separate cause number and expressly stated in its summary-judgment order that the summary judgment finally disposed of all remaining claims and parties. The City Parties included both trial court cause numbers in this appeal and initially argued that the trial court erred

combined motion for new trial, for reconsideration, and for modification of the judgment to be overruled by operation of law.

In two issues, the City Parties challenge the trial court's judgment denying their plea to the jurisdiction and granting the summary-judgment motion of the Pension System and its board.

## II. PLEA TO THE JURISDICTION

The state generally has sovereign immunity from suit and liability. *See Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 429–30 (Tex. 2016). When political subdivisions of the state act in a governmental capacity, they share in the state's immunity, which is then referred to as governmental immunity. *See id*. Unless waived, governmental immunity from suit defeats a trial court's subject-matter jurisdiction. *See Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004).

A trial court's subject-matter jurisdiction is properly challenged in a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). We review the trial court's ruling on a plea to the jurisdiction de novo. *Chambers-Liberty Ctys. Navigation Dist. v. State*, 575 S.W.3d 339, 345 (Tex. 2019). The movant may challenge whether the plaintiff has pleaded facts showing the trial court's jurisdiction or may challenge the existence of jurisdictional facts. *Miranda*, 133 S.W.3d at 226–27. If the movant challenges the plaintiff's pleading, we look to the plaintiff's intent and construe the pleading liberally in the plaintiff's favor to determine whether the facts alleged affirmatively demonstrate the trial court's jurisdiction to hear the matter. *Klumb*, 458 S.W.3d at 8. If the movant challenges the

---

in severing the issue of attorney's fees; however, the parties later settled that dispute, rendering that issue moot.

9

existence of jurisdictional facts, parties may submit evidence supporting or opposing the plea, which we review under the same standard applicable to a traditional motion for summary judgment. *Chambers-Liberty Ctys.*, 133 S.W.3d at 224 (citing *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 384 (Tex. 2016)). We take as true all evidence favorable to the plaintiff, indulging every reasonable inference and resolving any doubts in the plaintiff's favor. *Sampson*, 500 S.W.3d at 384. If the relevant evidence fails to raise a fact question on the jurisdictional issue, the court rules on the plea to the jurisdiction as a matter of law. *Miranda*, 133 S.W.3d at 228. But if the evidence creates a fact question regarding jurisdiction, then the trial court must deny the plea to the jurisdiction and allow the factfinder to resolve the issue. *Id.* at 227–28.

Even if a political subdivision's governmental immunity has not been waived, a claim may be brought against a governmental official for ultra vires conduct. *Pension Sys. I*, 549 S.W.3d at 576. Conduct is ultra vires if the official acted without legal authority or failed to perform "a purely ministerial act." *Id.* For an act to be considered ministerial, the law must prescribe and define the duty to be performed with such precision and certainty that nothing is left to the official's exercise of discretion or judgment. *Id.*

## A.     Eligibility for Pension-System Membership

The City Parties first assert that, pursuant to sections 4(4) and (5) of the Act, the CCSI Employees are ineligible for pension-system membership. Those statutory provisions state as follows:

> Notwithstanding any other provision of this Act, the following employees of the city or of the pension system are not eligible to become members of the pension system:
>
> . . .
>
> (4)     independent contractors, including consultants; and

10

> (5) employees in positions covered by any other pension plan of the city to which the city contributes . . . except to the extent that they are covered in another pension plan only as a beneficiary.

TEX. REV. CIV. STAT. ANN. art. 6243h, § 4(4) and (5). We address each subsection in turn.

### 1. *The City Parties did not establish that CCSI Employees are independent contractors.*

To prove that CCSI Employees are independent contractors, the City Parties relied in their jurisdictional plea solely on the affidavit of Frank Wilson, who, at the time of his affidavit, was both CCSI's president and Houston First Corporation's chief financial officer. Wilson attested that the Services Agreement between CCSI and Houston First Corporation stipulates that each employee of CCSI is an independent contractor with respect to the employee's duties at Houston First Corporation. The Pension System responded that binding authority establishes that these personnel are employees rather than independent contractors. The Pension System is correct.

As the Supreme Court of Texas explained in *Klumb*, it is the province of the Pension System's board to construe the Act, and the board's decision is beyond judicial review so long as the board's construction "neither inherently nor patently conflicts" with the Act's terms. *Klumb*, 458 S.W.3d at 10. The Pension System resolved in October 2011 that

> [E]mployees of any entity controlled, directly or indirectly, by the City are considered Employees for purposes of membership in [the Pension System], unless the External Affairs Committee expressly determines otherwise; provided, however that nothing in this resolution would apply to . . . any otherwise ineligible employee as determined by the External Affairs Committee.

*Id.* at 12. In November 2011, the External Affairs Committee further resolved that the personnel nominally employed by CCSI and leased to Houston First Corporation

11

"remain as members of the plan." *Id.* at 6. The *Klumb* court held that the board's construction of the term "employee" did not present a "conspicuous and irreconcilable conflict" with the Act, and thus, the board's actions were not subject to judicial review. *Id.* at 11. The court further held that the Act authorized the pension board to delegate decision-making to the External Affairs Committee as it had done. *Id.*

The City Parties have neither disputed that CCSI Employees are among the "employees of any entity controlled, directly or indirectly, by [the City]," nor produced evidence that "the External Affairs Committee [has] expressly determine[d] otherwise." They do not contend that the External Affairs Committee has determined that CCSI Employees are ineligible for membership in the Pension System or that the Act conspicuously requires the Pension System's board to give dispositive effect to a stipulation by City-controlled entities that CCSI Employees are independent contractors. Thus, the trial court correctly rejected this argument.

> ### 2. *The City Parties did not establish that the CCSI Employees' participation in the City's 401(k) program renders them statutorily or constitutionally ineligible for membership in the Pension System.*

The City Parties next contend that, pursuant to section 4(5) of the Act, CCSI Employees are ineligible for membership in the Pension System because they already are covered by a 401(k) program to which the City contributes. In a related argument, the City Parties argue that the Texas Constitution bars CCSI Employees from receiving benefits from both the 401(k) program and the Pension System for the same service. Thus, the City Parties conclude that the Pension System has failed to assert true ultra vires claims because the City is not required by law to contribute to the Pension System or to make pick-up payments with respect to those employees.

The Pension System responds that it is the City's creation of the 401(k) program that violates the Texas Constitution, and that the question of the CCSI

12

Employees' membership in the Pension System has already been decided in favor of membership.

To resolve this dispute, we must construe both the Texas Constitution and the pension statute. These are questions of law, which we review de novo. *In re M.G.N.*, 441 S.W.3d 246, 248 (Tex. 2014) (per curiam).

### (a) The City's creation of the 401(k) program is not unconstitutional.

Because both sides argue that the other side's position violates the Texas Constitution, we begin with these arguments. We construe constitutional provisions to give effect to the intent of the provision's makers and adopters, relying heavily on the literal text. *Harris Cty. Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 842 (Tex. 2009). We presume the language was carefully selected, and we interpret the words as they are generally understood. *Id.*

Article XVI, section 67(a)(2) of the Texas Constitution provides,

> *A person may not receive benefits from more than one system for the same service*, but the legislature may provide by law that a person with service covered by more than one system or program is entitled to a fractional benefit from each system or program based on service rendered under each system or program calculated as to amount upon the benefit formula used in that system or program. . . .

TEX. CONST. art. XVI, § 67(a)(2) (emphasis added).[4] Although both sides rely on the italicized language, they reach opposing incorrect conclusions.

---

[4] The proposition on the ballot which the adopters, i.e., the voters, approved did not summarize this specific subsection but instead described the measure as a whole as, "[t]he constitutional amendment revising and consolidating provisions relating to state and local retirement systems and programs and providing for a maximum state contribution to state systems of 10 percent of the aggregate compensation paid to individuals." Tex. S.J. Res. 3, § 3, 64th Leg., R.S. (1975) (inadvertently not published in *General and Special Laws of Texas*).

13

The Pension System maintains that the City's creation of a 401(k) program covering CCSI Employees is illegal and that the Texas Attorney General issued an opinion "holding that the second pension plan would be unconstitutional." The Pension System is mistaken on both points.

The language of the constitutional provision is unambiguous. It simply prohibits a person whose service is covered by more than one system from receiving benefits from more than one system unless the legislature authorizes the person to receive fractional benefits from each.[5] Far from prohibiting the creation of multiple benefit systems potentially applicable to the same service, this provision expressly acknowledges that it is possible for a governmental employee to be "a person with service covered by more than one system or program." *Id.* Moreover, municipalities are expressly authorized to create retirement systems. *See* TEX. GOV'T CODE ANN. § 810.001 (authorizing municipalities and other political subdivisions to create public retirement systems).[6] Thus, the Pension System is mistaken in arguing that the City violated the Texas Constitution by creating a 401(k) program, because rather than restricting the creation of more than one benefit system, this constitutional provision restricts only the receipt of benefits from multiple systems.

Consistent with this provision's plain meaning, the Texas Attorney General opinion cited by the Pension System is a response to a question as to whether this constitutional provision "would preclude a retired City employee *from receiving benefits* from both the existing municipal pension system, established under article 6243h of the Revised Civil Statutes, and a separate retirement system that the City is contemplating establishing." Tex. Att'y Gen. Op. No. GA-0221, at *1 (2004)

---

[5] Although inapplicable here, the same provision also permits the legislature to authorize transfer of service credit between certain retirement systems.

[6] The Act also permits the Pension System and the City to enter into a written agreement to offer alternative retirement plans. *See* TEX. REV. CIV. STAT. ANN. art. 6243h, § 1C(b).

14

(emphasis added).[7] The Attorney General concluded that article XVI, section 67 of the Texas Constitution forbids a person from receiving benefits from both the Pension System and from a separate retirement system established by the City. *Id.* at *6. But for the reasons we have explained, the City's establishment of a retirement system that is separate from the Pension System does not itself violate this constitutional provision, nor did the Attorney General suggest otherwise.

**(b)** **Nevertheless, the City Parties did not establish that the 401(k) program necessarily bars CCSI Employees' membership in the Pension System.**

The City Parties likewise err in assuming that CCSI Employees for whom 401(k) contributions have been made are constitutionally barred from membership in the Pension System. Again, the provision only bars a person from receiving benefits from more than one system for the same service; it does not identify the system from which an employee will receive benefits when more than one system potentially applies.

The real question is, when two systems of retirement benefits apply to the same service by CCSI Employees, and the legislature has not authorized a CCSI Employee or beneficiary to receive fractional benefits from both systems, which system is the one from which that employee or beneficiary can receive benefits?

The Texas Constitution does not provide the answer, but the Act tells us who makes that decision: "The pension board . . . may . . . determine all questions, whether legal or factual, relating to eligibility for membership, service, or benefits or relating to the administration of the pension fund to promote the uniform

---

[7] The separate retirement system contemplated by the City in 2004 is not the 401(k) program the City established for CCSI Employees in 2011. The system considered in 2004, but never enacted, would have provided retirement benefits consisting entirely of the lump-sum payment of the departing employee's unused sick leave and vacation leave accumulated over the course of that person's employment by the City.

15

administration of the pension fund for the benefit of all members and retirees . . . ." TEX. REV. CIV. STAT. ANN. art. 6243h, § 2(x)(4). And as discussed above, it was decided in *Klumb* that the pension board acted within its authority in determining that CCSI Employees are members of the Pension System unless the External Affairs Committee expressly determines otherwise or determines that the employee is ineligible for membership. The City Parties do not contend that the External Affairs Committee has made such determinations.

This ineligibility argument therefore appears to rest on the implicit assumption that the Act requires the External Affairs Committee to determine that the City's creation and funding of a 401(k) program covering CCSI Employees renders those employees ineligible for membership in the Pension System. But the Act's terms do not dictate that result. To illustrate why this is so, one need only consider the terms that make up the ineligibility provision on which the City Parties rely.

Section 4(5) of the Act states that the City employees ineligible for membership in the Pension System are those "employees in positions covered by any other *pension plan* of the city to which the city contributes." *Id.* § 4(5) (emphasis added). The City Parties construe this provision by relying on the expression "pension plan" as it is used in the Employee Retirement Income Security Act of 1974.[8] But article 6243h supplies its own definitions, and "[c]ourts must adhere to legislative definitions of terms when they are supplied." *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018). As used in the Act, "'[p]ension' means a benefit payable to a retired member *out of the pension fund* based on a disability or service retirement." TEX. REV. CIV. STAT. ANN. art. 6243h, § 1(15) (emphasis added). And

---

[8] *See, e.g.*, 29 U.S.C. § 1002(2)(A), (34), and (35).

"'[p]ension fund' means assets consisting of the contributions made by the city, contributions made by any member, and any income, profits, or other amounts resulting from the investment of those contributions." *Id.* § 1(17).

If we knew nothing more about the term "pension fund" as used in the Act, then the term might apply equally to the funds that are part of the Pension System and those that are part of the City's 401(k) program. But the Act goes on to commit the management and administration of "the pension fund" to the Pension System's board. *See id.* § 2(o) ("The pension board shall receive, manage, and disburse *the pension fund* as provided by this Act and rules adopted by the pension board.") (emphasis added); *id.* § 2(x) ("The pension board shall manage *the pension fund* under this Act . . . .") (emphasis added). And the Pension System's board is instructed to conduct its "administration of the pension fund to promote the uniform administration of the pension fund *for the benefit of all members and retirees*." *Id.* § 2(x)(4). "'Member' means each active employee included in the pension system, except for an employee who is ineligible under Section 4 of this Act," and "retiree" is "a former member of the pension system who . . . has separated from service" and who has met the eligibility requirements for, and is receiving, "a deferred retirement pension, normal retirement pension, or disability pension under this Act based on service that was credited to the person." *Id.* § 1(13), (22).

In effect, then, section 4(5) of the Act would render an employee ineligible for membership in the Pension System if the employee is covered by "any other pension plan" to which the City contributes and in which benefits are paid from the pension fund administered by the Pension System's board for the benefit of the Pension System's members and retirees.

The City does not contend that its 401(k) program pays benefits from a pension fund that is so administered. Indeed, it would make no sense for a pension

17

fund benefiting those ineligible for membership in the Pension System to be administered by the Pension System's board for the benefit of the Pension System's current and former members.

The legislature, however, has committed the redress of the Act's defects and inconsistencies to the Pension System's board:

> The pension board . . . may . . . interpret and construe this Act . . . ; correct any defect, supply any omission, and reconcile any inconsistency that appears in this Act in a manner and to the extent that the pension board considers expedient to administer this Act for the greatest benefit of all members; [and to] determine all questions, whether legal or factual, relating to eligibility for membership, service, or benefits or relating to the administration of the pension fund to promote the uniform administration of the pension fund for the benefit of all members and retirees . . . .

*Id.* § 2(x). The board therefore could permissibly construe the Act in a manner that maintains the CCSI Employees' eligibility for membership in the Pension System, and it already has determined that all CCSI employees are members unless the External Affairs Committee determines otherwise. We note parenthetically, for example, that assuming that the receipt of benefits from both the Pension System and the City's 401(k) program would be impermissible, the Act itself permits the pension board to "offset amounts received wrongly or in error . . . from future pension or benefit payments payable to the person or the person's beneficiaries." TEX. REV. CIV. STAT. art. 6243h, § 3(h). Thus, the board could use the power of offsetting benefits to effectively cancel out "amounts received wrongly" from the 401(k) program—and indeed, the City Parties pleaded the right of offset as an affirmative defense.

We overrule this sub-issue.

**B.      Retrospective Relief**

Although the Supreme Court of Texas rejected this argument during the earlier appeal in this case, the City Parties again assert that the Pension System failed to assert proper ultra vires claims because the Pension System seeks retrospective relief.

Unless abrogated by the legislature, political subdivisions generally retain governmental immunity from suits for money damages. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 369–70 (Tex. 2009). Thus, immunity generally bars suits for retrospective monetary relief. *Id.* at 368–69. But, "where statutory or constitutional provisions create an entitlement to payment, suits seeking to require state officers to comply with the law are not barred by immunity merely because they compel the state to make those payments." *Id.* at 371. To fall within this exception for ultra vires claims, the claimant "must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Id.* at 372.

As the Supreme Court of Texas has explained, the Act imposes a ministerial duty on the City to contribute to the Pension System, and that by "seeking payments for what it is owed on the date of judgment and in the future," the Pension System pleaded for prospective relief. *Pension System I*, 549 S.W.3d at 582. The Pension System did not amend its petition after the Supreme Court of Texas decided the issue. Based on the law of the case as established in *Pension System I*, this sub-issue is without merit. *See Briscoe v. Goodmark Corp.*, 102 S.W.3d 714, 716–17 (Tex. 2003) ("The 'law of the case' doctrine is defined as that principle under which questions of law decided on appeal to a court of last resort will govern the case throughout its subsequent stages." (quoting *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986))).

## C.     Recovery of Amounts under the MCA

The City Officials also assert that the trial court erred in denying their plea to the jurisdiction because the Pension System did not allege and prove an ultra vires claim inasmuch as the Pension System sought to recover under a contract rather than under a statute. *See Pension Sys. I*, 549 S.W.3d at 576 ("[M]erely failing to comply with a contract does not give rise to an ultra vires claim.").

This argument was asserted by, and resolved against, the City Officials in *Pension System I*. While it is true that the Pension System did not seek in this suit to recover the higher contribution rate required by the Act and instead asked only to recover the lower contribution rate specified in the MCA, "litigants can seek less than the maximum amount that could be claimed by law." *Id.* at 579. Thus, the Supreme Court of Texas held that the Pension System pleaded a valid ultra vires action for the failure to make payments to the pension fund. *Id.* at 580.

We overrule this sub-issue.

## D.     Res Judicata

The City Parties also assert that, based on the judgment in *Klumb*, the Pension System's "claims are barred (by immunity) because they are barred by res judicata."

Res judicata—or more precisely, claim preclusion—is a doctrine precluding relitigation of claims that have been finally adjudicated and claims that could have been litigated in the prior action.[9] *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996). It is an affirmative defense[10] requiring proof of (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties

---

[9] "Res judicata" has sometimes been used generically to refer not only to claim preclusion but also to issue preclusion, also known as collateral estoppel. *See Barr v. Resolution Tr. Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.3d 627, 628 (Tex. 1992).

[10] *See* Tex. R. Civ. P. 94.

or those in privity with them; and (3) a second action based on the same claims as were raised, or could have been raised, in the first action. *Id.*

The first element has not been satisfied. A dismissal due to governmental immunity constitutes a final determination on the merits only as to whether governmental immunity was waived on the facts of the case presented. *See Sykes*, 136 S.W.3d at 640. The judgment in *Klumb* dismissed the claims against the Pension System for want of subject-matter jurisdiction due to the Pension System's governmental immunity; thus, the judgment was a final judgment on the merits only regarding the issue of the trial court's lack of jurisdiction over the claims against the Pension System. *Klumb* accordingly could preclude certain claims *against* the Pension System on jurisdictional grounds, but it does not present a similar jurisdictional bar as to claims *by* the Pension System.

We overrule this sub-issue.

## E.     Recovery of Lump-Sum Payments

The City Parties further argue that the Pension System's ultra vires claims are barred by immunity because the Pension System seeks to recover lump-sum payments for "liability layers" that the Act does not require the City to pay.

In fact, the Pension System's live pleading does not mention lump-sum payments or "liability layers." The Pension System pleaded for mandamus relief compelling the City Parties "to allocate funding in the current City budget to provide the statutorily required payments," "to make such payments to [the Pension System] in accordance with the allocation," "to include in all future proposed City budgets the contributions owed for [CCSI Employees]," and "to pick up and pay any biweekly contributions made on their behalf." That pleading was filed in 2015 under an earlier version of the Act; the Act did not address "liability layers" until 2017,

21

when the legislature amended the Act while the petition for review in the earlier appeal in this case was pending before the Supreme Court of Texas. The appeal was decided after the Act's amendment, and the court explained that "[u]nder the statute, the City must make contributions to the pension fund and pick up payments on behalf of employees." *Pension System I*, 549 S.W.3d at 571. Because this is the relief the Pension System sought in its pleading, it pleaded for relief authorized by the Act.[11]

We overrule this sub-issue. Having overruled all of the sub-issues of the City Parties' challenge to the denial of their plea to the jurisdiction, we overrule this issue in its entirety.

### III. SUMMARY JUDGMENT

We turn now to the summary judgment in favor of the Pension System Parties. They moved for traditional summary judgment on the Pension System's affirmative claims and moved for both no-evidence and traditional summary judgment on the City Parties' affirmative defenses, counterclaims, and third-party claims. We review both traditional and no-evidence summary judgments de novo. *See Boerjan v. Rodriguez*, 436 S.W.3d 307, 310 (Tex. 2014) (per curiam).

To prevail on a traditional motion for summary judgment, the movant must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *see Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). If the movant carries this burden, the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018) (citing *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995)). On review, we

---

[11] It was unnecessary for the Pension System to amend its petition on remand because its live pleading already encompassed "statutorily required payments," including payments required under the Act as amended.

22

construe the evidence in the light most favorable to the non-movant, crediting evidence favorable to the nonmovant if a reasonable juror could and disregarding contrary evidence unless a reasonable juror could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

In a no-evidence motion for summary judgment, the movant asserts that there is no evidence of one or more essential elements of the claim or defense for which the nonmovant bears the burden of proof at trial. TEX. R. CIV. P. 166a(i); *see Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The burden then shifts to the nonmovant to present evidence raising a genuine issue of material fact as to the elements specified in the motion. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). We will affirm a no-evidence summary judgment when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

## A.     The Pension System's Affirmative Claims

The Pension System moved for traditional summary judgment on its affirmative claims on the ground that, "[a]s a result of *Klumb*, it became undisputable that [CCSI Employees] are, as a matter of law, 'employees' of the City and thus 'members' of the [Pension System] Plan" for whom the City must make statutorily required contributions and "pick up" payments.

In their summary-judgment response, the City Parties asserted all the same arguments raised in their plea to the jurisdiction, each of which was properly rejected by the trial court. Of course, the City Parties were the movants regarding the jurisdictional plea and the Pension System Parties were the summary-judgment

23

movants; thus, the burden of proof was largely reversed. As the summary-judgment respondents, the City Parties needed only to raise a genuine issue of material fact to defeat the Pension System Parties' claims. Given this difference, we will briefly explain why the City Parties failed to do so.

> 1. ***The City Parties failed to raise a fact question about whether the CCSI Employees' membership in the Pension System violates the Act or the Texas Constitution.***

As in their plea to the jurisdiction, the City Parties asserted in their summary-judgment response that CCSI Employees are ineligible for membership in the Pension System because they are independent contractors and are covered by the City's 401(k) program.

Regarding the employees' alleged status as independent contractors, the Supreme Court of Texas held in *Klumb* that the Pension System acted within its authority in defining the CCSI Employees as "Employees for purposes of membership in [the Pension System]" and in subsequently reaffirming that the employees "remain as members of the plan." *Klumb*, 458 S.W.3d at 6, 12. Contrary to the City Parties' assertion, a stipulation between two City-controlled entities that CCSI Employees are independent contractors does not change this, for as previously discussed, the authority to define the term "employee" belongs to the Pension System's board.

As for the 401(k) program, we have explained at length that the Pension System is free to construe the Act so as to maintain the CCSI Employees' eligibility for membership in the Pension System without violating either the Act or the Texas Constitution. Thus, summary judgment could not be defeated on these grounds.

***2.*** ***The Pension System did not pursue contract claims or seek retrospective relief or lump-sum payments.***

The City Parties also again argued that the Pension System was not pursuing proper ultra vires claims because the Pension System sought (a) to enforce a contract—the MCA—rather than to compel performance of non-discretionary duties, (b) retrospective relief, and (c) lump-sum payments.

For the reasons previously discussed, each of these arguments fails. The argument that the Pension System was seeking to enforce the MCA or pleaded for retrospective relief was decided against the City Parties in *Pension System I.* Moreover, the Act was amended in 2017 to address "legacy liability," carrying forward unpaid amounts due from the City and incorporating them into the City's current liabilities. This relief therefore is not retrospective. Finally, the Pension System neither pleaded for, nor was awarded, lump-sum payments not required by the Act.

***3.*** ***The Pension System did not seek, and was not awarded, specific amounts; rather, the judgment prescribes payment in accordance with the Act at specified percentages.***

Finally, the City Parties argue that the Pension System failed to offer evidence for the amounts it sought to recover. But the Pension System did not seek, and was not awarded, a specific amount. The Pension System asked in its motion that the City Parties be compelled to make, in accordance with the Act, (a) contribution payments of 29.36% of the pensionable payroll for CCSI Employees for fiscal year 2017 (i.e., July 1, 2016, to June 30, 2017); (b) contribution payments of 8.17% of the pensionable payroll for CCSI Employees for fiscal year 2018; (c) contribution payments of 8.27% of the pensionable payroll for CCSI Employees for fiscal year 2019; (d) all future contribution payments owed for CCSI Employees under sections 8–8F of the Act, with payments to be made in accordance with those sections;

(e) "pick up" payments owed for CCSI Employees for fiscal year 2019; and (f) all future "pick up" payments owed for CCSI Employees under section 8 of the Act, with payments to be made in accordance with that section. When the Pension System Parties filed their summary-judgment motion, they still were trying to obtain from the City information about the CCSI Employees needed to calculate the pensionable payroll, so the total amounts owed were not calculated. Moreover, the Act requires unfunded past liabilities, referred to as "liability layers," to be amortized and included in future contribution amounts. Thus, in the final judgment, the trial court ordered the City Officials to provide the Pension System information about CCSI Employees and to include those employees in the pensionable payroll for fiscal years 2017 and 2018 "such that the excess liability as calculated by the [Pension System] actuary based on the correct and updated information for [CCSI Employees] is a current obligation of the City."

The trial court rendered judgment in fiscal year 2019, so for that fiscal year, the trial court ordered the City Officials to cause the City to make "pick up" payments for CCSI Employees and to contribute to the pension fund 8.27% of the pensionable payroll for CCSI Employees.

The City Parties assert that the Pension System Parties produced no evidence supporting the contribution rates discussed in its summary-judgment motion and in the supporting affidavit of the Pension System's executive director, and that the Pension System Parties failed to "offer any actual risk sharing valuation study at all." But the City Parties have overlooked the Pension System Parties' summary-judgment reply, in which they pointed out that the contribution rates discussed in their summary-judgment motion are the same rates that the City has paid for all members of the Pension System except CCSI Employees. This statement was supported by actuarial valuations, including risk-sharing valuations, that were

26

attached to the summary-judgment reply. The trial considered the summary-judgment reply and its accompanying evidence, as is shown by the statement in the final judgment that the trial court considered "the Motion, the Plea, all supporting and opposing papers, summary-judgment evidence, pleadings on file, the applicable law, and the arguments of counsel." The City Parties do not contend that the trial court acted impermissibly in doing so. *See Stiles v. Resolution Tr. Corp.*, 867 S.W.2d 24, 26 (Tex. 1993) (the effect of Texas Rule of Civil Procedure 166a(c)'s language "is to unequivocally restrict the trial court's ruling to issues raised in the motion, response, *and any subsequent replies*") (emphasis added).

We overrule the City Parties' challenges to the summary judgment on the Pension System's claims.

## B. The City Parties' Affirmative Defenses,[12] Counterclaims, and Third-Party Claims

The Pension System Parties moved for both no-evidence and traditional summary judgment regarding the City Parties' affirmative defenses, counterclaims, and third-party claims. Because the trial court granted summary judgment on these issues without specifying the grounds, we will affirm the ruling if it may have been rendered, properly or improperly, on a ground not challenged on appeal. *See Collins v. D.R. Horton-Tex. Ltd.*, 574 S.W.3d 39, 44 (Tex. App.—Houston [14th Dist.] 2018, pet. denied).

---

[12] To successfully move for summary judgment, a claimant is not required to negate the non-movant's affirmative defenses. *See, e.g.*, *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 593 (Tex. 2017); *Nichols v. Smith*, 507 S.W.2d 518, 520 (Tex. 1974) (sub. op.). Nevertheless, the Pension System Parties preemptively sought summary judgment rejecting the City Parties' affirmative defenses. We have grouped the City Parties' affirmative defenses, counterclaims, and third-party claims together simply because we dispose of all three for the same reason: failure to challenge all grounds on which summary judgment may have been granted.

Here, the City Parties have challenged only the Pension System Parties' grounds for traditional summary judgment on the City Parties' affirmative defenses, counterclaims, and third-party claims. Because they have not challenged the no-evidence grounds for summary judgment on these subjects, we overrule these sub-issues, and thus, we overrule the entirety of the City Parties' issue challenging the summary judgment.

## IV. CONCLUSION

Having overruled the two issues that survived for our consideration, we affirm the trial court's judgment.

/s/    Tracy Christopher
Chief Justice

Panel consists of Chief Justice Christopher and Justices Spain and Wilson.